**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROBERTO WYNN, ) | CASE NO. 1:11-cv-1215 |
| ) | |
| Petitioner, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| DONALD MORGAN, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Roberto Wynn ("Wynn"), challenges the constitutionality of his conviction in the case of *State v. Wynn*, Cuyahoga County Court of Common Pleas Case No. CR-08-510316. Wynn, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on June 13, 2011. On October 5, 2011, Warden Donald Morgan ("Respondent") filed his Answer/Return of Writ. (ECF No. 6.) Wynn filed a Traverse on October 31, 2011. (ECF No. 7.) For reasons set forth in detail below, it is recommended that Wynn's petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Wynn's conviction as follows:

[*P3] On April 25, 2008, five friends, Christopher Basie, Michael Harris, Willie

Jackson, Brian Gardner, and DiMarco Spencer, were cruising around an eastside Cleveland neighborhood in Willie Jackson's grey customized Ford van.  Upon arriving in the vicinity of 9500 block of Parmalee Avenue, the van came under a barrage of gunfire. Christopher Basie was shot in the head and died at the scene.

[*P4]  On May 12, 2008, the Cuyahoga County Grand Jury indicted Wynn on one count of aggravated murder with mass murder and three-year firearm specifications attached for the death of Basie.  The grand jury also indicted Wynn on four counts of attempted murder of Harris, Jackson, Gardner, and Spencer.  These counts also had three-year firearm specifications attached.

[*P5]  In addition, the grand jury indicted Wynn on four counts of felonious assault of Harris, Jackson, Gardner, and Spencer with three-year firearm specifications attached. Wynn pleaded not guilty at his arraignment and the matter proceeded to a jury trial, which commenced on February 9, 2009.

Jury Trial

[*P6]  The State presented the testimony of twenty witnesses.  Thirteen-year-old Clifshell Stevenson testified that Wynn is a close friend of her cousin, Decarlin Duncan, and is also familiar with him from seeing him around the neighborhood.  Stevenson testified that on the day of the shooting she was on the front porch of her home playing with two friends, while her two younger cousins were playing with chalk on the sidewalk in front of the house.

[*P7]  Stevenson testified that several big boys came from the backyard of an adjacent house.  Moments later, she observed a burgundy van pull up almost in front of her house.  Wynn exited the vehicle, proceeded to stand behind a tree on the opposite side of the street, and took a gun out of his pocket. As a grey van drove by, Wynn began shooting into the van.  Stevenson testified that initially Wynn was having problems getting the gun to fire.  Wynn fired three shots into the grey van and then fled in the burgundy van.

[*P8]  Stevenson testified that when the shooting began, she jumped off the porch, grabbed her younger cousins, dragged them to the porch, and instructed them to keep their heads down.  Stevenson testified that at the time of the shooting Wynn, was wearing jeans, a white tee shirt, and a Yankees baseball hat.  Stevenson stated that later that evening she saw Wynn walking down the street wearing different clothes.

[*P9]  Stevenson's nine-year-old cousin, Tanesha Townsend, testified that she was standing in the grass in front of her grandmother's house when the shooting began.  Townsend testified that she observed Wynn standing by a tree in front of the house directly across from her grandmother's house.  Townsend testified that

Wynn took a black gun out of his pocket and began shooting. Townsend stated that after the shooting began, Stevenson grabbed her and her cousin, Cameron, and dragged them to the porch.

[*P10] DiMarco Spencer testified that three days prior to the shooting, he was sitting on his front porch when Wynn and two other males robbed him at gunpoint. Spencer testified that Wynn and his companions took his money, cell phone, keys, and van.

[*P11] Spencer testified that on the day of the shooting he was riding around with Basie, Harris, Jackson, and Gardner, when he observed two groups of men that were about to fight. Spencer testified that he noticed Wynn in the crowd and pointed him out to his friends as one of the individuals who had robbed him earlier that week. Spencer stated that they did not approach Wynn because they thought he might be armed.

[*P12] Spencer testified that he and his companions drove to a friend's house, where they visited for a few minutes, and then left. Spencer testified that moments after leaving the friend's house, he heard gunshots, and when he looked out the window, he saw Wynn standing by a tree shooting at the left side of the van. DiMarco testified that a bullet hit Basie in the head and Basie immediately slumped over. DiMarco unsuccessfully tried to revive Basie, who died at the scene.

[*P13] Tyrone Payne testified that on the evening of April 25, 2008, he was at the corner of East 102nd Street and Parmalee Avenue, when he observed Wynn in the middle of the block shouting "clear it out." Wynn shouted "clear it out" to get the little children off the street. Payne testified that moments later Wynn began shooting at a van as it drove down the block. Payne stated that when the van reached where he was standing, he saw that the side window behind the driver's seat and one of the tires had been shot out.

[*P14] Sergeant Nathan Willson of the Cleveland Police Department's forensic unit testified that he examined three spent shell casings that were discovered at the scene of the shooting. Sgt. Willson testified that his examination led him to conclude that the casings were fired from a semi-automatic handgun and that they were fired from the same gun. Sgt. Willson also examined the bullet that was taken out of the victim's body, and concluded that it was at one point in a casing similar to the three found at the scene.

[*P15] On February 25, 2009, the jury found Wynn guilty of murder, the lesser included offense of aggravated murder, with the three-year firearm specification attached. The jury also found Wynn guilty of two of the four counts of attempted murder with three-year firearm specifications attached. In addition, the jury

> found Wynn guilty of all four counts of felonious assault with three-year firearm specifications attached to each count.
>
> [*P16]  On February 27, 2009, the trial court sentenced Wynn to an aggregate prison term of 30 years to life. Wynn now appeals.

*State v. Wynn*, 2010 Ohio App. LEXIS 433, 2010-Ohio-519 at ¶¶3-16 (Ohio Ct. App., Feb. 18, 2010) (footnotes omitted).

## II. Procedural History

### A.  Conviction

In May of 2008, a Cuyahoga County Grand Jury charged Wynn with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) together with firearm and mass murder specifications, four counts of attempted murder in violation of O.R.C. §§ 2903.02(A) & 2923.02 together with firearm specifications, and four counts of felonious assault in violation of O.R.C. § 2903.11(A)(2) together with firearm specifications. (ECF No. 6-1, Exh. 1.)

On February 9, 2009, a jury trial commenced.  (ECF No. 6-2, Tr. 38.)  After the State rested, Wynn's motion for acquittal pursuant to Ohio Criminal Rule 29 was denied.  (ECF No. 8-1, Exhs. 8.)  After the close of all the evidence, Wynn renewed his motion for acquittal, which was again denied.  (ECF No. 8-1, Exh. 9.)  On February 25, 2009, Wynn was found not guilty of aggravated murder, but guilty of the lesser included offense of murder in violation of O.R.C. § 2903.02.  (ECF No. 6-1, Exh. 11.)  Wynn was also found guilty of two counts of attempted murder and all four counts of felonious assault.  *Id*.  Each conviction carried a firearm specification.  *Id*.  On February 27, 2009, the trial court sentenced Wynn to an indefinite term of

thirty years to life imprisonment.[1]  (ECF No. 6-1, Exh. 12.)

**B.   Direct Appeal**

On March 30, 2009, Wynn, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

1. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.

2. Appellant's convictions are against the manifest weight of the evidence.

3. The trial court erred by ordering convictions and a consecutive sentence for separate counts of murder and attempted murder and felonious assault because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.

(ECF No. 6-1, Exh. 14.)

On February 18, 2010, Wynn's conviction was affirmed.  (ECF No. 6-1, Exh. 16.)

On March 22, 2010, Wynn, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the same three propositions of law as in the state appellate court.  (ECF No. 6-1, Exhs. 17 & 18.)  On June 9, 2010, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 6-1, Exh. 20.)

---

[1] For the murder conviction, Wynn received fifteen years to life plus three years for the firearm specification (*i.e.* eighteen years to life).  (ECF No. 6-1, Exh. 12.)  The firearm specification was merged for all counts for sentencing purposes.  *Id.*  The two attempted murder convictions merged with two felonious assault convictions.  For those, ten year sentences were imposed to be served concurrently to one another, but consecutive to the murder conviction.  *Id.*  Finally, the two remaining felonious assault convictions each added a two year sentence to be served concurrently to one another but consecutive to the murder and attempted murder convictions.  *Id.*

**C.     Application to Reopen Appeal and Motion for Postconviction Relief**

On June 11, 2010, Wynn, *pro se*, sought leave to file a motion for post-conviction relief, which was denied on September 1, 2010.  (ECF No. 6-1, Exhs. 21 & 23.)

On June 21, 2010, Wynn, *pro se*, filed an application to reopen his appeal arguing that appellate counsel was ineffective.  (ECF No. 6-1, Exh. 24.)  On November 8, 2010, the application was dismissed as untimely.  (ECF No. 6-1, Exh. 26.)

**D.     Federal Habeas Petition**

On June 13, 2011, Wynn filed a Petition for Writ of Habeas Corpus.  His three grounds for relief can be summarized as follows: (1) he was denied due process and equal protection of the law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court denied his motion for acquittal pursuant to Ohio Crim. R. 29(A); (2) his convictions violated due process in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because they were against the manifest weight of the evidence and not supported by sufficient evidence; and, (3) he was denied due process and equal protection of the law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court imposed consecutive and non-minimum prison sentences for allied offenses under Ohio law.  (ECF No. 1.)

### III.  Review on the Merits[2]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

---

[2] Respondent has not asserted that any of Wynn's claims are unexhausted and/or procedurally defaulted, or that his petition was untimely.  (ECF No. 6.)  Therefore, the Court will proceed directly to the merits of Wynn's petition.

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Grounds One and Two: Sufficiency and Manifest Weight of the Evidence**

In ground one of the petition, Wynn argues that he was denied due process and equal protection when the state court denied his motion for acquittal pursuant to Ohio Criminal Rule 29(A). (ECF Nos. 1 & 7.) Essentially, ground one challenges the sufficiency of the evidence supporting Wynn's convictions. (ECF Nos. 1 & 7.) In ground two, Wynn raises both a sufficiency a sufficiency of the evidence and manifest weight argument. *Id*.

Manifest weight claims are not cognizable on federal habeas review.[3] *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio 2006). Therefore, Wynn's manifest weight argument will not be considered.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction

---

[3] As explained by the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence - as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Wynn's conviction was against the manifest weight of the evidence. *Id*.

be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.; Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review).

The state appellate court, applying the *Jackson* standard as expressed in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (Ohio 1991), determined that there was sufficient evidence to support Wynn's conviction, as follows:

> [*P17] In the first assigned error, Wynn argues the trial court should have granted his motion for acquittal because the State failed to present sufficient evidence to sustain his conviction. We disagree.
>
> [*P18] Crim.R. 29(A), which governs motions for acquittal, states:
>
>> "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such

offense or offenses."

[*P19]  The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*:

"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

[*P20]  *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

[*P21]  After reviewing the evidence in a light most favorable to the State, we find that the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of murder, attempted murder, and felonious assault.

[*P22]  In this case, four witnesses testified that they observed Wynn shooting into the grey van as it drove by on Parmalee Avenue.  Two of the witnesses, Stevenson and Townsend, were very familiar with Wynn by virtue of his friendship with their cousin, and by seeing him around the neighborhood.  Both Stevenson and Townsend were standing on the opposite side of the street from where the shooting occurred.

[*P23]  A third witness, Spencer, testified that as the van came under gunfire, he looked through the window and observed Wynn standing beside a tree and shooting into the van.  Spencer testified that he recognized Wynn as the individual who had robbed him at gunpoint three days earlier.  Spencer also testified that he had seen Wynn earlier that evening among the two groups of men that were about to fight, and had pointed him out to the other occupants of the vehicle.

[*P24]  A fourth witness, Payne, who was familiar with Wynn from seeing him

> around the neighborhood, testified that he observed Wynn "clearing out" the street in anticipation of the shooting.  Payne then observed Wynn shooting into the grey van as it drove down Parmalee Avenue.
>
> [*P25]  Finally, the physical evidence collected at the scene and the coroner's determination that Basie died as a result of a gunshot wound to his head, corroborates the eyewitnesses' testimonies that Wynn fired multiple shots as the van drove down Parmalee Avenue.
>
> [*P26]  Based on the testimony of the four eyewitnesses, as well as the physical evidence collected, we conclude there was sufficient evidence to sustain Wynn's convictions for murder, attempted murder, and felonious assault.  Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the State proved all of the essential elements of the instant charges beyond a reasonable doubt.  Thus, the trial court properly denied Wynn's motion for acquittal.  Accordingly, we overrule the first assigned error.

*Wynn*, 2010-Ohio-519 at ¶¶ -26 (footnotes omitted).

Wynn asserts that the testimony of witnesses Clifshell Stevenson, DiMarco Spencer, and Michael Harris were unreliable due to alleged inconsistencies in their previous statements. (ECF No. 7.)  However, when addressing a sufficiency of the evidence claim, a habeas court may not conduct its own determination as to the credibility of witnesses.  The state appellate court's decision was neither contrary to, nor an unreasonable application of clearly established federal law, and its determination of the facts in light of the evidence presented was also reasonable.

Furthermore, this Court has conducted its own independent review of the trial transcript. The state appellate court's recitation of the relevant eyewitness testimony is accurate.  Clifshell Stevenson ("Clifshell'), a thirteen year old girl at the time of Wynn's trial, testified that she knew Wynn because he was friends with her cousin and from seeing him often in the neighborhood. (Tr. 999-1002.)  She testified that she was on a porch across the street with two friends and her nine-year old cousin, Tanesha Townsend ("Tanesha"), when the shooting occurred.  (Tr. 1003-05.)  She observed a burgundy van parked near her house, and saw Wynn exit the vehicle, stand

-11-

behind a tree on the opposite side of the street, take a gun out of his pocket, and fire three gunshots towards a grey van as it drove by.  (Tr.  1007-10.)  Tanesha also testified that she knew Wynn because he was friends with her cousin.  (Tr. 1272-73.)  Tanesha stated that she saw Wynn stand next to a tree, pull a gun out of his pocket, and fire two shots towards a black car on the side of the street.  (Tr. 1273- 77.)  Tanesha testified that two of Wynn's friends were also shooting guns.  (Tr. 1277.)  DiMarco Spencer, a passenger in the van that was fired upon, testified that he heard gunshots and saw Wynn standing by a tree firing a gun at the van.  (Tr. 1155.)  He testified that bullets hit the van breaking one of the windows.  (Tr. 1156-57.)  Another eyewitness, Tyrone Payne, testified that he heard Wynn yelling "clear it out," saw a van drive down the street, and saw Wynn begin shooting a gun.  (Tr. 1483-86.)  He testified he had known Wynn for a few months from seeing him around the neighborhood.  (Tr. 1487.)

In his traverse, Wynn attacks the credibility of these witnesses alleging that they gave inconsistent statements and that their testimony conflicts.  (ECF No. 7.)  The Court, however, is constrained from making credibility assessments.  It is largely immaterial that some level of inconsistency exists between the various eyewitnesses, as all of them were consistent on key points.  Construing the evidence in a light most favorable to the prosecution, this Court must conclude that any rational trier of fact could find the essential elements to support the conviction.  Therefore, Wynn's first ground for relief is without merit.

**B.  Ground Three: Consecutive Sentences for Allied Offenses**

In ground three of the petition, Wynn asserts that his convictions and sentences should have merged under O.R.C. § 2941.25 as allied offenses.  (ECF No. 1.)  Respondent contends that this is not a cognizable claim as it is based solely upon the construction of Ohio's sentencing laws.

(ECF No. 6 at 13-14.)

The state appellate court addressed this issue as follows:

> [*P32] In the third assigned error, Wynn argues the trial court erred when it ordered convictions and a consecutive sentence for separate counts of murder, attempted murder, and felonious assault, because they are allied offenses and part of the same transaction. We disagree.
>
> [*P33] In the instant case, the grand jury indicted Wynn for the aggravated murder of Basie, and the jury found him guilty of the lesser included offense of murder, along with the three-year firearm specification. The trial court then sentenced Wynn to an indefinite term of 15 years to life plus three years for the firearm specification.
>
> [*P34] The grand jury also indicted Wynn for the attempted murder of Spencer, Gardner, Jackson, and Harris. In addition, the grand jury indicted Wynn for the felonious assault of the foregoing individuals. The jury found Wynn guilty of the attempted murder of Spencer and Gardner, but not of Jackson and Harris. Further, the jury found Wynn guilty of felonious assault of all four individuals.
>
> [*P35] The trial court merged the attempted murder and felonious assault convictions relating to Spencer and Gardner, and sentenced Wynn to ten years plus three years for the firearm specifications. The trial court ordered the sentences served concurrently, but consecutively to the sentence for the murder conviction.
>
> [*P36] As it relates to the convictions involving the felonious assault of Jackson and Harris, the trial court sentenced Wynn to two years plus three years for the firearm specifications. The trial court ordered the sentences served concurrently, but consecutively to the murder and attempted murder convictions. The trial court then merged the firearm specifications relating to Spencer, Gardner, Jackson, and Harris with the firearm specification attached to the murder conviction.
>
> [*P37] R.C. Section 2941.25(A) provides as follows: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
>
> [*P38] The Ohio Supreme Court has held that felonious assault is an allied offense to attempted murder. We have also held that where there are multiple victims, the defendant could be sentenced for each separate victim.
>
> [*P39] Here, a review of the sentences the trial court imposed reveals that the

> trial court properly merged the attempted murder and felonious assault convictions relating to Spencer and Gardner. Since the jury found Wynn not guilty of the attempted murder of Jackson and Harris, there was nothing to merge, thus the trial court correctly sentenced Wynn for the felonious assault convictions relating to these individuals.
>
> [*P40] We conclude the sentences the trial court imposed comported with R.C. 2941.25(A) and is not contrary to our prior holdings and the pronouncement of the Ohio Supreme Court regarding allied offenses. Accordingly, we overrule the third assigned error.

*Wynn*, 2010-Ohio-519 at ¶¶32-40 (footnotes omitted).

The U.S. Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *accord Estelle v. McGuire*, 502 U.S. 62 (U.S. 1991) *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984). "More particularly, a claim that the trial court violated state law when sentencing a prisoner ... is not cognizable in a federal habeas corpus proceeding." *Mayse v. Morrow*, 2008 U.S. Dist. LEXIS 22711 at *25 (M.D. Tenn. Mar. 20, 2008).[4] "Insofar as petitioner alleges that the two crimes should be merged because involving related acts, he raises a matter of state law, see Ohio Rev.Code § 2941.25, resolved against him in the state courts. This state law question is not cognizable in federal habeas corpus." *Heard v. Jago*, 515 F. Supp. 162, 167 (S.D. Ohio 1980); *see also Davie v. Mitchell*, 291 F. Supp. 2d 573, 590 (N.D. Ohio 2003) ("The petitioner's

---

[4] The *Mayse* decision noted that "[i]t does not appear that [t]he Sixth Circuit has held in a published opinion that violations of state law in sentencing is not cognizable in a federal habeas corpus proceeding. However, the Sixth Circuit has so held in numerous unpublished opinions. *See Terry v. Trippett*, No. 94-2077, 1995 U.S. App. LEXIS 23150, 1995 WestLaw 469424, at *1 (6th Cir. (Mich.)); *Lunsford v. Hofbauer*, No. 94-2128, 1995 U.S. App. LEXIS 9479, 1995 WestLaw 236677, at * 2 (6th Cir. (Mich.)); *Wilcox v. Littlefield*, No. 94-3625, 1995 U.S. App. LEXIS 4724, 1995 WestLaw 98822, at * 2 (6th Cir. (Ohio)); *Cheatham v. Hosey*, No. 93-1319, 1993 U.S. App. LEXIS 30105, 1993 WestLaw 478854, at * 2 (6th Cir. (Mich)); *Johnson v. Abramajtys*, No. 91-1465, 1991 U.S. App. LEXIS 30356, 1991 WestLaw 270819, at * 10 (6th Cir. (Mich.))."

contention that a violation of state law resulted from the trial court's failure to merge the offenses is not cognizable in this federal habeas corpus proceeding.") Based on the foregoing, Wynn fails to present a cognizable claim. On the merits, the state appellate court reasonably found that there were five separate victims resulting in five separate crimes, and merger was, therefore, not required.

In his traverse, Wynn expands his argument to include a more specific claim that his consecutive, non-minimum sentence without fact-finding was unconstitutional.[5] (ECF No. 7 at 6-7.) The Respondent has not made any contrary argument or claimed procedural default. This Court, however, has addressed the same issue many times before, finding it meritless. As the Court understands Wynn's argument, the trial court, without unconstitutional fact finding, was required to impose the shortest prison term authorized for each offense. Further, the Ohio Supreme Court's decision in *State v. Foster*, 845 N.E.2d 470, 109 Ohio St.3d 1 (Ohio 2006) that severed the fact finding requirement from Ohio sentencing law, operates as an unforeseen judicial enlargement of the authorized sentence. The United States Supreme Court has clearly established that, except for the existence of a prior conviction, facts supporting the increase of a sentence beyond the "statutory maximum" must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The *Apprendi* Court was careful to state that the ruling does not remove all

---

[5] Wynn's brief on direct appeal before the state appellate court did not raise this argument, nor did his memorandum in support of jurisdiction before the Ohio Supreme Court. (ECF No. 6-1, Exhs. 14 & 18.) Both briefs only argued that his sentences were improper due to his belief that he was convicted of allied offenses of similar import. *Id*.

discretion from sentencing judges:

> . . . nothing in this history [of sentencing procedures] suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. *See, e.g., Williams v. New York*, 337 U.S. 241, 246 (1949).

*Id.* at 481, 120 S.Ct. 2348 (emphasis in original).

On February 27, 2006, the Ohio Supreme Court decided *Foster* which struck down O.R.C. §§ 2929.14(B), (C) and (E)(4), among other sections, as unconstitutional under *Blakely* because they required a court to make findings, not determined by a jury beyond a reasonable doubt, before the imposition of certain sentences on an offender who had never been to prison. *Foster*, 109 Ohio St.3d at 26. The Ohio Supreme Court, applying a remedy similar to that adopted in *Booker*, severed O.R.C. §§ 2929.14(B), (C) and (E)(4) thereby allowing trial courts full discretion to impose a prison sentence within the statutory range without making findings or giving reasons for exceeding the minimum sentence. *Id*. at 30.

Wynn asserts that his sentence violates *Rogers v. Tennessee*, 532 U.S. 451 (2001). (ECF No. 7 at 6.) The United States Constitution specifically prohibits states from passing *ex post facto* laws. U.S. Const., Art. I, § 10, cl. 1. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers*, 532 U.S. at 460.

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notions of due process." *Id*. at 456.  In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).[6]  Such a *post hoc* criminalization of previously-innocent acts fails to give defendants fair warning of the punitive consequences of their behavior.  The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the Due Process Clause.  *Id*. at 458-461.  These judicial limitations are most concisely reflected in the basic principle of fair warning.  The *Rogers* Court rested its rationale on "core concepts of notice, foreseeability, and in, particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459.

The Sixth Circuit has rejected arguments identical to the one Wynn currently advances.  In *Semala v. Duffey*, the Court addressed the issue as follows:

> In 2009, Semala filed the instant § 2254 petition, arguing that the trial court (1) violated her rights under the Due Process and Ex Post Facto Clauses by sentencing her to more-than-the-minimum and consecutive prison terms that were not available to the court at the time she had committed the offenses; and (2) violated her individual due process rights by sentencing her to more-than-the-minimum and consecutive prison terms without additional findings made by the

---

[6] While the *Bouie* Court held that a defendant may only be punished for acts that were criminal at the time the defendant performed them, the Court also held that unconstitutional statutes may nevertheless give a defendant fair warning of the penalties that a state may seek to impose on a defendant.  *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *United States v. Duncan*, 400 F.3d 1297, 1307-08 (11th Cir. 2006).

-17-

> jury and where she lacked actual or constructive notice of the possible sentences. A magistrate judge issued a report recommending that Semala's petition be denied. The district court adopted the report and recommendation over Semala's objections and denied the petition.
>
> On appeal, Semala argues that her resentencing under *Foster* "violated the ex post facto prohibitions inherent in the Due Process Clause" because it retroactively subjected her "to a sentence that exceeded the sentence she was subject to when the alleged offenses were committed." She argues that, by severing the statutes, the Ohio Supreme Court allowed the trial court to sentence her to non-minimum terms without having to make any of the findings on the record, as was previously required under Ohio Rev. Code § 2929.14(B).
>
> Upon de novo review, *see Bell v. Bell*, 512 F.3d 223, 231 (6th Cir.), *cert. denied*, 129 S. Ct. 114, 172 L. Ed. 2d 35 (2008), we find that, because non-minimum and consecutive sentences were always potentially available, and Semala was at all times aware of their potential availability, her resentencing under *Foster* violated neither the Ex Post Facto nor the Due Process Clause. *See Hooks v. Sheets*, 603 F.3d 316, 2010 WL 1655578, at *4 (6th Cir. 2010).

*Semala v. Duffey*, 2010 U.S. App. LEXIS 24564 at **2-3 (6th Cir. June 9, 2010).

In addition, Ohio federal district courts have also rejected *ex post facto* challenges to the retroactive application of judicial reconstruction of a statute. *See, e.g., Keith v. Voorhies,* 1:06CV2360, 2009 U.S. Dist. LEXIS 4726, at * 34, (N.D. Ohio Jan. 23, 2009)( Lioi, J.); *Watkins v. Williams*, 2008 U.S. Dist. LEXIS 47557 (N.D. Ohio Jun. 17, 2008) (Adams, J.); *Lyles v. Jeffreys*, 2008 U.S. Dist. LEXIS 33822 (N.D. Ohio Apr. 24, 2008) (Oliver, J.); *Smith v. Moore,* 2008 WL 3890009, Case No. 3:07CV1121, (N.D. Ohio Aug. 19, 2008) (Adams, J.); *Hooks v. Sheets*, 2008 U.S. Dist. LEXIS 77612 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.).[7]

---

[7] The Ohio Supreme Court also addressed the *ex post facto* and due process issues when a defendant is resentenced under *Foster* for an earlier offense. The Court found there was no violation of a Sixth Amendment right to a jury trial. It also held that neither the *Ex Post Facto* nor Due Process Clauses were violated. *State v. Elmore*, 122 Ohio St.3d 72, 912 N.E.2d 582 (Ohio 2009). The *Elmore* Court concluded that the defendant had notice of the sentencing range, which was the same at the time he committed the crimes as when he was resentenced. While the Ohio Supreme Court's interpretation of federal

Moreover, Wynn's argument as it relates to the imposition of consecutive sentences is wholly without merit. Wynn omits any discussion of the United States Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160 129 S.Ct. 711, 172 L. Ed. 2d 517 (2009). In *Ice*, the Supreme Court made it clear that *Blakely* and the Sixth Amendment are simply inapplicable to consecutive sentences, explaining that historically juries played "no role in the decision to impose sentences consecutively or concurrently [but] [r]ather, the choice rested exclusively with the judge." 129 S. Ct. at 717. The Sixth Circuit explained that since a defendant "was always subject to consecutive rather than concurrent sentences in the discretion of the trial court, [a] re-sentencing under *Foster* did not raise *ex post facto* or due process concerns." *Hooks v. Sheets*, 603 F.3d 316, 321 (6th Cir. 2010). Therefore, when imposing a consecutive sentence, neither the presence nor the lack of judicial fact-finding violates clearly established federal law. As such, any argument that *Blakely* precluded the imposition of consecutive sentences is unavailing.

### IV. Request for Evidentiary Hearing

In his traverse, Wynn requests an evidentiary hearing. (ECF No. 7 at 9.) Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir. 2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted)). However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *Id.*

---

law is not binding on this Court, the *Elmore* decision is persuasive and consistent with federal rulings on this matter.

In this case, upon review of the pleadings and transcripts, the issues presented can be resolved from the record. An evidentiary hearing is, therefore, not required.

## V. Conclusion

For the foregoing reasons, it is recommended that Wynn's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: June 1, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**